## TUNE *v.* BEELAND.

1. In an action of complaint for land, where the plaintiff relies for a recovery on a deed from the defendant to T., and a deed from T. to the plaintiff, an amendment to the answer, alleging that the conveyance of the defendant to T. was without other consideration than to place the title in T. until he should pay a certain creditor, and that this creditor was shortly afterwards paid, and that the plaintiff took his deed with knowledge of these facts, and praying a cancellation of plaintiff's deed, was properly rejected. The allegations in the proffered amendment, under the rule that the allegations of the pleading should be taken most strongly against the pleader, charge in effect that the deed sought to be canceled was given to delay the maker's creditor; and courts will not set aside a conveyance, made to hinder, delay, or defraud creditors, at the instance of the grantor.

2. Nor will a grantor in such a deed be allowed to set up such a defense, and support the same by evidence, to defeat the plaintiff's recovery.

3. If one induces another to buy land as the property of a third person, he will thereafter be estopped from asserting his title against such third person, who is ignorant of the true title, and has no convenient means of acquiring such knowledge. But where the facts relied on to establish the estoppel do not unequivocally show an estoppel in pais, the jury, and not the judge, should determine whether the facts constitute such an estoppel.

Argued July 27,—Decided November 14, 1908.

Complaint for land. Before Judge Martin. Taylor superior court. October 7, 1907.

*C. B. Marshall* and *Hardeman, Jones & Johnston,* for plaintiff in error. *O. M. Colbert* and *R. S. Foy,* contra.

EVANS, P. J.  Homer Beeland brought suit against W. N. Tune, to recover a small piece of land specifically described, and located within the east half of lot 171 of the 14th district of Taylor county.  From the abstract of title attached to the petition it appears that plaintiff claims that the defendant Tune, being the owner of an undivided half interest in the eastern half of lot 171 (which embraced the premises in dispute) on November 9, 1898, conveyed it to Cora Trapp, who on August 24, 1899, conveyed it to the plaintiff.  The abstract of title to the other half interest of the eastern half of lot 171 recited a deed from Hattie E. Cosey, W. F. Williamson, and Edgar W. Williamson to E. S. Beeland and Homer Beeland, dated December 1, 1903, and a deed from E. S. Beeland to Homer Beeland, January 2, 1905.  The defendant filed a plea, admitting his possession of the land, and denying that the plaintiff had title thereto.  On the trial of the case the defendant offered the following amendment to his plea: "Now comes the defendant, and for further answer says: 1.  The deed from defendant to Cora Trapp was executed and delivered under an express agreement that so soon as defendant should pay a debt which defendant was then and there owing to one C. C. Souder, amounting to $16, that she would reconvey to this defendant the land so conveyed.  That defendant in a few days paid said debt, and that thereupon said Cora Trapp agreed to reconvey, and attempted so to do, and thereupon instructed the clerk of Taylor superior court to cancel said deed.  2.  That there was no other or further consideration of any kind whatever for the execution of said deed by this defendant, and that said Cora Trapp thereafter held said property under an implied trust to reconvey the same to this defendant.  3.  That said Homer Beeland had full notice of said agreement between defendant and said Mrs. Cora Trapp, and himself carried the money to said Souder and paid the same.  4.  That said deed from defendant to Cora Trapp and the deed from Cora Trapp to plaintiff should be decreed by the court to be surrendered up and canceled, and the title to the property sued for should be decreed to be in this defendant. Wherefore he prays that said deeds be decreed to be delivered up and canceled, and the title to the land above described be decreed to be in this defendant."  The court refused to allow this amendment, and exception is taken to this ruling.  The case proceeded

34

to trial, and upon the conclusion of the evidence the court directed a verdict for the plaintiff, and this action of the court is assigned as error.

1, 2.   The plaintiff in error contends that the facts pleaded in the proffered amendment do not authorize an inference that the conveyance from Tune to Mrs. Trapp was made for the purpose of delaying or defrauding Tune's creditor; but that, on the other hand, it was executed to secure a debt, and that the debt had been paid.   If the deed was given to secure a debt, why should not the pleader so allege?   There is no basis for the inference that Mrs. Trapp advanced any money to Tune, or to Tune's creditor for his benefit.   What then could have been the object of Tune's conveyance to Mrs. Trapp?   It was neither a deed of bargain and sale, nor a deed to secure a debt.   The implication is irresistible that Tune desired to vest the title in Mrs. Trapp until he could pay Souder.   Even if it be conceded that two conclusions as to the purpose and intent of Tune in giving the deed may be deduced—one that the deed was given to secure a debt, and the other that it was executed to defraud the maker's creditor, the latter conclusion must prevail.   It is an elementary rule of pleading that the allegations are to be construed most strongly against the pleader; and if two constructions can be put on the pleadings, that which is least favorable to the pleader must obtain. The construction, therefore, which should be placed on the facts pleaded is that Mrs. Trapp and the defendant entered into an agreement whereby Tune was to convey his land to her in order that he might put it out of the reach of his creditor, so as to gain time to raise the money with which to pay him.   It is admitted that the recital in the deed that the land was sold for $300 is untrue, and from the allegations no inference can be drawn that Mrs. Trapp either furnished or contracted to furnish the money to pay the debt of Souder upon the faith of the conveyance to her.   The law brands as fraudulent every conveyance made with intention to delay or defraud creditors, where such intention is known to the party taking.   Civil Code, §2695 (2). The courts will not set aside a conveyance to hinder, delay, or defraud creditors, at the instance of the grantor.   *Watkins* v. *Nugen,* 118 *Ga.* 375 (45 S. E. 260).   When a suitor applies for equitable relief, he must come into court with clean hands with

respect to the matters concerning which he asks such relief. The defendant was not entitled to have the deeds canceled as prayed.

The defendant contended on the trial, that, although denied the affirmative relief of cancellation, he at least should be permitted to prove the allegations of the rejected amendment as a defense to the action. He offered to testify as follows: "That the warranty deed from W. N. Tune to Mrs. Cora Trapp, dated November 9, 1898, the consideration expressed being $300.00, and the property conveyed being one-half undivided interest in the east half of lot No. 171 in the 14th district of Taylor county, was executed and delivered by him to M. J. Trapp, who was general agent for his wife, Mrs. Cora Trapp, the grantee, and who acted for her exclusively in the transaction, she being at no time present, without consideration. That he, Tune, was then and there indebted to one C. C. Souder, and the claim of said Souder against said Tune was in the hands of R. S. Foy as the attorney of said Souder for collection; that said M. J. Trapp proposed to said Tune that he convey said property to Mrs. Cora Trapp, and that as soon as Tune paid the $16.00, which was the amount of his indebtedness to Souder, the said Mrs. Trapp would reconvey the land to Tune; that there was no other consideration for the execution and delivery of said deed; that a few days afterwards, Tune, having raised the money, $16.00, carried it to Trapp, the plaintiff, Homer Beeland, being present, and Homer Beeland took the money and undertook to carry it to R. S. Foy and pay it to him for Souder, and actually did so, and thus paid the debt. That Trapp at that time stated in the presence of Homer Beeland that his wife, Mrs. Cora Trapp, pursuant to the agreement, would reconvey to said Tune the land described in the deed from Tune to Mrs. Trapp. That shortly afterwards the said Trapp delivered to Tune a note addressed to O. T. Montford, [directing Montford to cancel this deed] which was likewise offered in evidence, and that Tune carried said note to Montford, and was told by Montford that he could not legally comply with Trapp's request. That from that time for several years thereafter said Tune continued to occupy said land as he had been doing before, and it was not until some time after the deed was made from Mrs. Cora Trapp to Homer Beeland that Tune ever heard of any claim being made by Mrs. Trapp under the deed which he made to her, and which

M. J. Trapp, her agent, wrote the clerk to cancel, when Tune had paid the money to Souder, which he undertook to pay when the deed was made to Mrs. Trapp." The court excluded this testimony, and properly so. Its effect was to establish a collusive arrangement between Tune and Mrs. Trapp, whereby Tune was to put the title of his land in Mrs. Trapp to delay Souder in the collection of his debt. As was said by Bleckley, C. J., in *Parrott* v. *Baker,* 82 *Ga.* 373 (9 S. E. 1071), "both upon principle and authority, the fraudulent maker of such instruments is bound by them according to their terms, irrespective both of any actual payment of a consideration, or any contemporary or subsequent change of possession. . . The title passes as completely, so far as the parties to the conveyance are concerned, where the possession is retained as where it is delivered. . . It is a mistake—a wide mistake—to regard an action of ejectment or complaint for land as a call upon the court to enforce the fraudulent deed as a contract. The law, taking the parties at their word and acting upon the deed as pure, has already executed it as a contract and transmuted it into title. The court is called upon to do nothing in behalf of the plaintiff to recover the land, but that which it does for every plaintiff who comes armed with complete title to recover possession of his property." It is true that the debt which Tune owed to Souder was small, and that he afterwards paid it. But the payment of the debt did not purge the fraud from the conveyance. The law does not grant absolution to a party simply because no loss is occasioned by his fraudulent act. The defendant put the title in Mrs. Trapp, and the court will not relieve him from its consequences by allowing him to show that it was made in pursuance of a collusive and fraudulent design. Besides, the evidence which was repelled was but an effort to prove the facts alleged in the amendment which was disallowed.

3. The plaintiff claimed title to the premises in dispute under two chains of title, each purporting to convey an undivided half interest. One of these chains originated with a deed from the defendant to Mrs. Cora Trapp, and has already been discussed. The other consisted of deeds from Mrs. Hattie E. Cosey and W. F. and E. W. Williamson to E. S. Beeland and the plaintiff, dated December 1, 1903, and a deed from E. S. Beeland to plaintiff, dated January 2, 1905. No paper title was traced to these gran-

tors, and it affirmatively appeared that they had never been in possession of the premises in dispute. The plaintiff testified that Mrs. Williamson, the mother of these grantors, died leaving three children, the grantors in this deed; that her husband predeceased her; that the defendant while living on the land sued for, and long before plaintiff got the deed from Mrs. Cosey and W. F. and E. W. Williamson, told him that he, the defendant, and Mrs. Williamson each owned an undivided one-half interest in the eastern half of lot 171, and that Mrs. Williamson at the time was living on a part of the eastern half of lot 171. By directing a verdict the court adjudicated that the deeds introduced in evidence, aided by the parol testimony, established a prima facie title in the plaintiff. In order to reach this result the plaintiff's right to recover must be rested in part upon an estoppel of the defendant, and not entirely on legal title or possession, as the plaintiff showed neither paper title nor possession in the Williamson children. When a plaintiff in ejectment relies on the defendant's conduct in aid of his title, he must show that he acted on such conduct in procuring his title. The doctrine of estoppel as to title to real estate is thus stated in our Civil Code: "§ 5151. Where the estoppel relates to the title to real estate, the party claiming to have been influenced by the other's acts or declarations must not only be ignorant of the true title, but also of any convenient means of acquiring such knowledge. Where both parties have equal knowledge or equal means of obtaining the truth, there is no estoppel. § 5152. In order for an equitable estoppel to arise, there must generally be some intended deception in the conduct or declarations of the party to be estopped, or such gross negligence as to amount to constructive fraud by which another has been misled to his injury." While the plaintiff testified that "long before" he bought from Mrs. Williamson's children the defendant admitted that he and Mrs. Williamson owned the land in common, he does not say in express terms that he acted on this information when he bought, or that he was ignorant of the true title, and had no convenient means of acquiring such knowledge. Even if the jury could have drawn this inference from his testimony, certainly the court could not draw this inference, when it was not necessarily deducible from the testimony. For this reason we think the court erred in directing a verdict.

*Judgment reversed. All the Justices concur.*

HOLDEN, J., (concurring specially). The defendant was resisting an action in ejectment, and the court refused to allow an amendment offered by him to his plea, which amendment set up that the deed from him, upon which plaintiff relied for a recovery, was given without other consideration than to place the title in the grantee therein until the defendant could pay a debt of $16 owing to a certain creditor, which debt he did pay a few days thereafter, and that the plaintiff took his deed from this grantee with knowledge of these facts. The court also refused to allow the defendant to introduce evidence for the purpose of defeating a recovery, the evidence offered being in substance the same as the allegations contained in the amendment which the court rejected. The writer can not agree to these rulings, which are based upon the decision that it should be held, as a matter of law, from the existence of the facts alleged, that the intention of the maker of the deed was to hinder, delay, or defraud his creditor, but concurs in the other rulings made in the case.

An assignment by a debtor of a part or all of his property with an agreement with the assignee that the latter is to hold the property until the assignor pays his debts to one or all of his creditors, though the purpose of the assignment is not mentioned therein, does not necessarily mean that the intention of the debtor in making the assignment was to hinder, delay, or defraud the creditor or creditors. His intention may have been the contrary. When a debtor makes a deed to one, with the agreement that the latter is to hold the title to the property conveyed until the debtor pays a certain creditor an obligation, it can not be said, *as a matter of law,* what the intention of the debtor was. The fact that a transaction is unusual, or even illegal, does not necessarily mean that the intention of the parties thereto is fraudulent. Where a debtor, wealthy or poor, conveys a part, or all of his property, it can not be said, as a matter of law, that he does so with intention to defraud, hinder, or delay a creditor, simply because he had an agreement with the grantee that the latter was to hold the property conveyed until the creditor was paid. It does not appear from the proffered amendment or evidence that the grantee was related to the debtor, or that the debtor was insolvent, or that he did not have much other property with which to pay this small debt, nor that the agreement that the grantee was to hold the title

to the land until the creditor was paid was to be kept a secret from the creditor, or any one else. The above-recited facts, the amount of the land conveyed, the improvements thereon consisting of a dwelling-house, the small amount of the debt owing by the debtor, and the fact that he did actually pay the debt in a *few days,* and all the other facts and circumstances of the transaction, were to be considered in determining what was the intention of the debtor in making the deed. When a deed is made, and a state of facts or circumstances is given, it is a matter of inference from them whether or not it was the intention of the parties to the deed to defraud creditors of the maker. This inference is to be drawn by the jury, and not by the court. The rule is announced in 2 Moore on Fraudulent Conveyances, 570, in the following language: "The nature of the intent ordinarily will not be presumed as a matter of law, but must be inferred by the jury from the facts in evidence." The opinion of the court can not be substituted for that of the jury. The intention of the debtor was locked in his own breast, and can only be judged of from facts and circumstances, and his intention is purely one of fact to be determined by the jury from such facts and circumstances. The debtor nowhere in the amendment disallowed, or the evidence excluded, says his intention was to hinder, delay, or defraud his creditor. Even if it be conceded that the probable effect of his conduct was to delay, or hinder, or defraud the creditor, it can not be said as a matter of law that it was his intention to do so. This doctrine is clearly announced in *Nicol* v. *Crittenden,* 55 *Ga.* 497, the first three headnotes of which case are as follows: "1. While it is true, in general, that a man is presumed to intend the natural and probable consequences of his own acts, it is not true that he is presumed to intend all their necessary consequences. Consequences may be necessary, and yet quite remote and unexpected. 2. That a given act was followed necessarily by delay to creditors, in the particular case, however strong as a circumstance to be weighed by the jury, is not ground for presuming, as matter of law, that it was intended to have that effect. 3. It is impossible that a sale can defraud creditors, unless it was made with a fraudulent intent; and the nature of the intent will not be presumed as matter of law, but must be inferred by the jury from the facts in evidence.

The deed in this case was not necessarily, or in fact, followed by delay or hindrance to or fraud on the creditor. The agreement that the grantee was to hold title to the property until a certain creditor was paid by the debtor, however strong as a circumstance to be weighed by the jury in determining whether the intent of the debtor was to hinder, delay, or defraud, to use the language of the decision in the *Nicol* case, cited supra, "is not ground for presuming, as a matter of law, that it was intended to have that effect," and "the nature of the intent will not be presumed as matter of law, but must be inferred by the jury." The rule of law announced in the first headnote in the present case, that "the allegations of the pleading should be taken most strongly against the pleader," is not to be questioned, but in connection therewith should be considered the rule of law announced in 2 Moore on Fraudulent Conveyances, 571, as follows: "A fraudulent intent can not be deduced from what the law pronounces honest; and where the circumstances attending a conveyance are consistent either with a fraudulent intent or honesty of purpose, fraud will not be imputed." The facts alleged are consistent with an honesty of purpose on the part of the debtor. In view of the rule of law above quoted and the decision in the *Nicol* case, supra, and our own statute which says, "Fraud may not be presumed," the writer is of opinion that the court should not say, as a matter of law, the intention of the debtor was to hinder, delay, or defraud his creditor, but the question as to whether or not such was his intention should be left to the jury. When a debtor says his only purpose in conveying a tract of land, or an article of personalty, to another, was that such other person should hold the title to the property until the debtor should pay a certain debt he owed another, it is not proper to say as a matter of law that this purpose was necessarily accompanied by a purpose to hinder, delay, or defraud the creditor. The latter purpose is not a necessary companion of the former. As a matter of law, to infer the latter purpose from the former is to presume fraud from a fact which does not necessarily show it. To make such presumption, as a matter of law, is in contravention of the Civil Code, §4029, which says, "Fraud may not be presumed," and of the rule of law announced in *Willis* v. *Foster*, 65 *Ga.* 82: "The existence or non-existence of fraud is peculiarly a question for the jury."