## SHERIDAN *v.* SHERIDAN.

1. A deed made by a husband to his wife, to hinder, delay, or defraud a person who had a subsisting claim against the husband for personal injuries inflicted on him by the operation of an automobile which the husband was driving, although void as to such person, was good between the parties, and operated to put the title to the property therein con-veyed in the wife; and a court of equity will not aid the husband by the cancellation of such deed, and by the restoration to him of the property therein conveyed, although the wife importuned him to make the deed for the purpose aforesaid, and promised him to cancel the deed and put the title back in him when the reason for making this deed had ceased.

2. When the husband filed his petition to cancel two deeds made by him to his wife, the first conveying, with other property, the premises in dispute, and the second deed conveying only the premises in dispute, on the grounds, that his deeds were without consideration, that they were procured by fraud practiced upon him by his wife, and by duress, that he was incapable mentally of making them, and that they had not been delivered; and when on the trial of the case it appeared from his own testimony that he was mentally capable of making the first deed, that the same was not procured by his wife by duress, that this deed was made for the purpose set out in the first headnote, and the jury found that this deed had been delivered, the court properly rendered a decree declaring title to be in the wife to the premises in dispute, and denying cancellation of these two deeds from the husband to the wife, and refusing to restore to the husband possession of the premises, although the jury found that the second deed was obtained by the wife by undue influence, and although the wife participated in the fraud which prompted the husband to make the first deed, and importuned and pressed him to make the first deed for said fraudulent purpose, promising to cancel the same and put title back in the husband; as the cancellation of the second deed would have been a vain and useless thing.

3. The verdict and decree on a controlling issue being demanded by the undisputed facts, it is unnecessary to consider any of the errors alleged to have been committed by the court in the trial of the case.

Nos. 2789, 2801. APRIL 14, 1922.

Equitable petition. Before Judge J. B. Jones. Hall superior court. July 9, 1921.

L. D. Sheridan filed his petition for cancellation of certain deeds against his wife, Anna C. Sheridan, and made this case: He and the defendant intermarried on June 11, 1916, and lived together until February, 1920. At the time of his marriage he was about 72 years of age, and was weak and feeble in mind and body. At the time of his marriage the defendant was 38 years of age, robust in body and mind, and still enjoying all the vitality and vigor of youth. At the time of his marriage he was possessed of lands and

other property of the value of $20,000, while his wife was without property and adequate means of support. Shortly after their marriage his wife began to persuade him to make over to her all his property on her promise to manage the same and to take care of him for the rest of his life. At the time, besides the natural weakness and feebleness that accompany old age, he was susceptible to frequent lapses, when his mind would be easily influenced and diverted from its natural condition. He was then especially affected by unusual worries and mental debility, and in this condition had little memory or will power, and his mental faculties were impaired. His physical and mental weakness was well known to his wife, and she took advantage of the same to gain an illegal advantage over him, and satisfy her selfish desires in getting control of his property, as is hereinafter stated. About July, 1918, he had an accident while driving his automobile, and a negro boy was injured thereby. Pending threatened litigation therefrom, his wife took advantage of this opportune situation, and insisted that he make her a deed to all his property, she claiming that this would relieve him from liability in the pending litigation. He objected to this procedure; but his wife, with full knowledge of his mental condition as above described, continued to insist that the deed be made as she suggested. Finally, in his weakened condition, and amid the great trouble and worry occasioned by the above situation, he, not being mentally capable of contracting at the time, and not being free to act under the circumstances, yielded to the artful persuasion of his wife, and, acting against his better judgment and over his protest, he was overpersuaded and induced by his wife to sign a deed purporting to convey to her all his property.

A copy of this deed is attached to his petition as an exhibit. It is dated February 10, 1919, and conveys a house and lot in Gainesville, the subject-matter of this suit, one farm of 200 acres, except fifty acres, a lot 100 by 150 feet in Gainesville, and a lot in Commerce. The stated consideration of this deed is the sum of five dollars, the natural love and affection of the grantor for the grantee, and of the services the grantee, as his wife, had already rendered to the grantor and might in the future render to him.

This deed, he alleges, is null and void and should be canceled, because it was wholly without consideration, because the pretended consideration for it has totally failed, because the defendant has

failed and still refuses to render to him the services described in said deed as part of its consideration, because he was mentally incapable of contracting at the time the deed was signed, because he "was induced to sign the same by the fraud and undue influence of the defendant as heretofore shown," because he was induced by his wife to sign the same "under duress as heretofore shown," and because said deed was never delivered. Before any delivery he tore his name therefrom, thereby intending to destroy and never deliver the deed. About four months after he tore his name from the deed, and without his ever having delivered it, his wife, secretly and without his knowledge, obtained said deed and his signature which was torn therefrom, pasted them together, and had them recorded in the clerk's office of the superior court of Hall county. As soon as he learned of this, he asked his wife for an explanation of her conduct, informing her that he had not delivered this deed to her, and was not going to do so, and had not intended she should gain possession of it; whereupon she flew into a fit of anger, abused him, and continued nagging him thereafter. At this time he was old and feeble, his mind was easily deranged by worry and vexation, he was thereby easily incapacitated to transact business, and his wife was young and vigorous, and was aware of his condition, thereby taking undue advantage of the same; and fraudulently designing and intending to overreach his free will and choice, she continued to harass, threaten, annoy, and overpersuade him, until he became so worried, perplexed, and distressed that he did not have his own free will and choice, by reason of the said acts and conduct of his wife. When she had knowingly and wilfully aggravated him into his mentally deranged condition, she told him that, if he would make her a deed to the home place, she would stop quarreling at and troubling him, and would live with him peacefully thereafter, and care for him as a true wife; and against his free will, he, not being left free to act in the circumstances, and not being in his normal mind, was thus induced to execute and deliver to his wife a deed conveying to her their home place. A copy of this deed is attached as exhibit B to his petition. This deed is dated July 11, 1919. It recites a consideration of five dollars, and other good and valuable consideration, and conveys to the defendant the house and lot in Gainesville, known as No. 37 North Bradford street, which is fully described in this deed. This deed is null

and void and should be canceled because it was wholly without consideration, because he was mentally incapable of contracting at the time he signed it, because he "was induced to sign same by the fraud and undue influence of defendant as heretofore shown," because he "was induced by his wife to sign same under duress as heretofore shown," and because the pretended consideration of the same has totally failed, in that, instead of ceasing her quarrelsome conduct and living with him peacefully and caring for him as a true wife should, and as she promised to do, she actually failed to do any of these things, she abused him and literally pushed him aside as her husband, and even went so far as to have illicit relations with other men. Finally she drove him from his own home, and now in his old age and feebleness he is a homeless wanderer. The house and lot conveyed by this deed is worth ten thousand dollars or other large sum. He has been deprived of the possession and rents thereof since February 1, 1920. His wife is holding said property adversely to him, and without legal right, claim, or title thereto. The defendant is insolvent. He prays that she be enjoined from selling, conveying, encumbering, leasing, or otherwise disposing of the property described in these deeds, that said deeds be set aside and canceled, and that said premises be restored to him.

The defendant demurred to this petition, on the ground that it set forth no cause of action. She demurred to all the allegations in reference to a cancellation of the deed last referred to as exhibit B, because the same do not show that the plaintiff at the time of its execution was non compos mentis, and because the same do not show any fraud or undue influence on the part of the defendant, or any other reason why the same should be canceled. The defendant demurred specially to one paragraph of the petition, because it set forth no facts showing either fraud or undue influence on her part toward the plaintiff. The court overruled the demurrer to the petition; and the defendant in due time filed exceptions pendente lite thereto, duly certified. In a cross-bill of exceptions the defendant assigns error upon these exceptions pendente lite.

In answer the defendant denied the substantial allegations of the petition touching the mental incapacity of the plaintiff and the charges of fraud, undue influence, and non-delivery of the deeds therein mentioned, and lack of consideration therefor. She further

set up, that the plaintiff had promised her that if she would marry him he would purchase and give to her a home; and that in pursuance of this antenuptial contract he bought and conveyed to her the house and lot in Gainesville. She further set up, that her husband consulted an attorney, and presented to her a contract, which had been prepared by his attorney and which he desired her to execute, by the terms of which she should execute to him a deed of gift conveying to him all the property embraced in his deed to her, bearing date February 10, 1919, except the house and lot in Gainesville, and that upon her making to him such deed of gift he would ratify said deed, provided that she, in consideration of said deed of conveyance of said house and lot, would relieve him from any and all claims that she had or might have in future against him or his property. She refused to execute said contract, and stated to her husband that she was willing to stand on the original prenuptial contract, and that she was willing to execute to him a deed of gift to all the property embraced in said deed, except said home place in Gainesville, and accept from him an additional conveyance of said property. The husband agreed to this disposition of the matter, and in pursuance of this understanding executed and delivered to her a deed to his home place, a copy of which is attached to his petition as exhibit B, and she executed and delivered to him a deed of gift to the remainder of the property embraced in his first deed to her, a copy of which is attached to his petition as exhibit A. She further set up, that after her husband had made to her the second deed to the house and lot in Gainesville, she, with his knowledge, made valuable improvements thereon, expending from three to four hundred dollars in making them; and that he is estopped from now asserting title thereto.

On the trial of the case there was no evidence that the plaintiff was mentally incapable of making his first deed to his wife. There was no evidence that this deed was executed under duress. The plaintiff testified that he made it knowing it to be a sham, intending to delay, hinder, and defraud a person who had been injured by him in the automobile accident referred to in his petition. From this testimony it further appeared that this deed had been delivered. He procured an attorney to prepare it, executed it out of the presence of the defendant, and brought it and delivered it to his wife.

The trial judge required the jury to find a special verdict of the facts only, and to this end propounded to the jury certain questions. These questions and the answers by the jury are as follows:

"Was the first deed made in compliance with a marriage contract? Ans. No.

"Was the first deed made for the purpose of avoiding the payment of a claim for damages? Ans. Yes.

"Was the first deed delivered by the plaintiff to the defendant? Ans. Yes.

"Did the plaintiff have sufficient capacity to make the second deed? Ans. Yes.

"Was the deed made without being unduly influenced by the defendant? Ans. No."

Counsel for the plaintiff made no objection to the court submitting to the jury the special issues of fact, and the above questions which were answered by the jury. Upon the rendition of said verdict the court rendered a decree reciting that the jury had returned a verdict finding that the plaintiff had executed and delivered to the defendant the deed of February 10, 1919, conveying to her, among other property, the house and lot in Gainesville, fully describing the same, and further reciting that it appeared from the pleadings and undisputed facts that the plaintiff had made and delivered to the defendant the deeds conveying to her this property, and that while she was in possession of said premises the plaintiff stood by and saw her treat said property as her own, and make valuable improvements thereon, without objection on his part. After these recitals the court decreed that the title to said house and lot passed from the plaintiff to the defendant, that the title thereto is now in the defendant, and that she is entitled to the ownership and possession thereof against the plaintiff. The decree denied the prayers of the petition for cancellation of said deed, and the restoration of the property to the plaintiff. To this decree the plaintiff filed his exceptions pendente lite, which set up the verdict containing the foregoing questions and the answers by the jury, and which further contain affidavits of six of the jurors who tried the case that they meant to find in favor of the plaintiff. These exceptions likewise set out the decree, and assigned error thereon, on the ground that the same is contrary to the law and to the verdict rendered by the jury, the same not being authorized

by the evidence and undisputed facts and the verdict, and that the court should have entered a decree in favor of the plaintiff for the premises in dispute and for the cancellation of the deeds from the plaintiff to the defendant. The plaintiff, during the term, made a motion for new trial, on the formal grounds; and on the hearing he amended the motion by adding twenty-three additional grounds complaining of various instructions of the court to the jury; alleging that the court erred in requiring the jury to find the special issues of fact, and in propounding to them the questions hereinbefore set out, without intimation or notice to the plaintiff or counsel that he intended to do so before he began his charge to the jury; and that said questions did not cover the issues involved in the case; and especially that the court did not submit to the jury the question whether the plaintiff had sufficient mental capacity to make either of said deeds, and failed to submit to the jury the question whether they were made under duress. The court overruled the plaintiff's motion for new trial, and error is assigned on this judgment.

*E. D. Kenyon, W. J. Phillips,* and *Howard Thompson,* for plaintiff.

*Charters, Wheeler & Lilly,* for defendant.

HINES, J. (After stating the foregoing facts.) The view we take of this case is that the decree rendered by the trial court was demanded by the verdict, and the undisputed facts in the record. If this conclusion is right, then it becomes unnecessary to consider the errors, if any, committed by the court in reaching the final conclusion reached in this case, and expressed in its decree.

On February 10, 1919, the plaintiff conveyed by deed to his wife a house and lot in Gainesville, Ga., a tract of two hundred acres of land in Hall County, Georgia, a lot lying just outside of the corporate limits of Gainesville, and a vacant lot at Commerce, Jackson County, Georgia. The alleged consideration of this deed was five dollars cash, which the evidence discloses the wife actually paid, the natural love and affection which the grantor had for the grantee, and the services which the grantee, as his wife, had already rendered unto the grantor, and might in the future render to him. In his petition the husband sought to have this deed canceled on the grounds: (1) that it was wholly without consideration; (2) that the pretended consideration had failed, as the defendant

had refused and still refuses to render to petitioner the services which she was to render as a part of the consideration of this deed; (3) that the grantor was mentally incapable of contracting at the time said deed was made; (4) that the grantor was induced to sign this deed by the fraud and undue influence of the defendant; (5) that he was induced to sign the same under duress; and (6) because this deed was never delivered.

This formidable attack on this deed completely crumbled and collapsed when the time came for the plaintiff to sustain the grounds of this attack. It can be conceded, for the sake of the argument, that there was no consideration paid or to be paid by the grantee to the grantor for the property conveyed by this deed; although the wife testified that it was made in pursuance of a prenuptial contract by which the plaintiff agreed, if she would marry him, that he would buy and convey to her a home, and that in pursuance of this agreement she married him. Marriage is a valuable consideration, and the wife stands, as to property of the husband settled upon her by marriage contract, as other purchasers for value. Civil Code, §§ 3006, 4243. But it is utterly immaterial, under the facts of this case, whether this deed was bottomed on a consideration, or was purely voluntary and without consideration.

There was no evidence that the plaintiff was mentally incapable of making this deed at the time he executed the same. On the contrary the evidence shows that he possessed sufficient strength of mind to have a full and clear understanding of the fact that he was making this deed and the purpose for which he was making the same. The fact that the grantor was induced by his wife to make this deed, in order to delay, hinder, or defraud his creditor, can not avail the plaintiff. He was equally guilty with his wife. They are both in the same boat. As both are equally guilty of this fraud, equity will leave them where it finds them. There was no evidence that the plaintiff signed this deed under duress. The jury found that this instrument had been delivered by the plaintiff to his wife, and this finding is supported by the evidence. The testimony of the plaintiff shows that this deed was made by the plaintiff for the purpose of hindering, delaying, or defrauding a person who had, at the time of the conveyance, a valid, subsisting claim for damages for a trespass upon his person. *Wise* v. *Moore,* 31 *Ga.* 148; *Westmoreland* v. *Powell,* 59 *Ga.* 256. Such a deed is binding upon the

parties, and conveys to the grantee a good title. The parties being in pari delicto, and the conveyance being an executed contract, the vendor can not impeach it as a muniment of title in the vendee and have it canceled, whether the vendee really paid the recited purchase-money or not, or whether she fraudulently induced him to make the conveyance for this purpose. *McCleskey* v. *Leadbetter*, 1 *Ga.* 551, 557; *Galt* v. *Jackson*, 9 *Ga.* 151; *Tufts* v. *DuBignon*, 61 *Ga.* 322; *Parrott* v. *Baker*, 82 *Ga.* 364, 370 (9 S. E. 1068); *Bagwell* v. *Johnson*, 116 *Ga.* 464 (42 S. E. 732); *Tune* v. *Beeland*, 131 *Ga.* 528 (62 S. E. 976); *Anderson* v. *Anderson*, 150 *Ga.* 142 (103 S. E. 160).

In his testimony the plaintiff gives the history of the execution of the deed of February 10, 1919, by him to his wife. On direct examination he testified: " I didn't want to be sued and have a judgment hanging over me, and she says ' I will tell you what to do now. You make your property over to me, and I will cancel it back to you all right, and they can't get it.' Well, I studied about it, and I thinks, well, may be that will do for awhile, and I can stave them off until I can get the money to pay it, and I done it. My wife first suggested that after I had told her about the circumstance; she says: ' I will tell you what to do, you make your property over to me, and I will cancel it back to you, and they can't sell you out.' Of course I was not satisfied over that solution of the matter. I never done no such business as that, and I always pay my debts, but I had been used to minding her, sorter keeping her in a good humor all the time the best I could, and I consented to it and made the deed and handed it to her. I told her I made the deed, and to look at it and hand it back to me, and I was going to keep it." Again, on cross-examination, in referring to this deed, plaintiff testified as follows: " I made it in order to shun the damage suit for awhile until I could get up the money. It was to be effective until I could get up the money and get rid of the damage suit, to pay it off, and she asked me to do it, and I backed out. I knew I was making a deed. I knew I was conveying her that property by this deed for a sham, just for a sham; and she said she would cancel it back. I think I understood all of that thoroughly. Was no misunderstanding about it. I was troubled mighty about this suit. I don't know as I did exactly know what I was doing when I made this deed. I can say anything you want

me to. I want to tell the truth and nothing but it. I think I knew I was making a deed when I made this deed here. I knew I was making it for the purpose of avoiding a damage suit, as she asked to do. If I had understood it thoroughly I might have known it wouldn't be no account. I understood my part. My part was making the deed in order to avoid a damage suit. Yes, that was right. I have always looked after my own business. Others have tried to, but they didn't do it, partly not. I have always made my own trades and my own purchases, and sold my own property whenever I wanted to. I never had any mental trouble that would prevent me from doing it. I made some mighty foolish trades though." Again in a written statement admitted by the plaintiff to have been written by him, the plaintiff stated, amongst other things, as follows: " She just wanted a house to put her things in, and I said I would buy her a house, not thinking we would marry or we would not. I meant it, for I had enough money and notes in sight that I could do without at that time, whether we were married or not, and I meant it, and I told her to look out for one and she picked out a $4000 house, and I told her I couldn't buy that sort of a house, and we rented one and did get married. Sometime in May, 1919, I think, I thought of another money scheme that might come on that was unjust, and I told her I would take the bankruptcy before I would pay it. She says, ' Make it over to me, and I will save it in case it does come, and if it don't I will give it back to you.' So that was about the 15th day of May, I think. So I deeded everything over to her and handed them over to her, and she looked at them. I told her to hand them back to me, that I would take care of them until another change took place; and she says, ' Why not me keep them ?' and wouldn't hand them back, and laid them on the table. I picked them up and put them in my drawer with my other papers. So I studied about it, and I believed she would take the advantage of me, the way she seemed about it; so I tore my name off the deeds and put them back and dropped the name down there too."

This testimony of the plaintiff clearly demonstrates that the purpose for which this deed was made was to delay, hinder, or defraud the person who had a claim against him for personal injuries; that the plaintiff was mentally capable at the time of making this deed; that it was not made under duress by his wife;

and that the same was delivered. This being so, his deed put title to the property in dispute in his wife. She is in possession under his deed. Under the authorities above cited, he can not attack this deed on the ground that it was obtained by the fraud of his wife; and equity, under the circumstances, will not cancel the same at his instance, he being mentally capable of making this deed, fully understanding the purpose for which it was made, and the same having been delivered to his wife.

For the above reason it becomes unnecessary to determine whether any errors were committed by the court in the trial of this case, and in the rendition of the decree therein establishing the title in the wife to the house and lot in dispute, denying the prayers of the plaintiff for cancellation of the two deeds he made to his wife, and refusing to award possession of this property to the plaintiff. Under the verdict rendered and in view of the undisputed facts under which the first deed from the plaintiff to his wife was made, which are fully set out above, a decree in favor of the wife was demanded. If the second deed from the husband to the wife was obtained by undue influence, its cancellation will not for that reason help the plaintiff in any way. The cancellation of the second deed would be a vain thing, as such cancellation will not restore to the plaintiff title, the right to the possession, and possession of the house and lot in dispute. Courts will not do a vain thing. The refusal of the court to cancel the second deed, on the ground that the same was obtained by the wife from the husband by undue influence, as the jury found, if erroneous, was entirely harmless. The conclusion reached and expressed in the decree was right and proper, and should not be disturbed.

The judgment on the main bill of exceptions is *affirmed;* and the cross-bill of exceptions is therefore *dismissed. All the Justices concur.*