28981. HARTFORD ACCIDENT AND INDEMNITY COMPANY *v.* MAUNEY.

Decided November 18, 1941. Rehearing denied December 16, 1941.

*Powell, Goldstein, Frazer & Murphy,* for plaintiff in error.
*Stanford Arnold,* contra.

BROYLES, C. J.   Frank L. Mauney (herein referred to as "plaintiff") sued Miller & Walden Inc. (herein referred to as "contractor") as principal, and Hartford Accident & Indemnity Company (herein referred to as "the indemnity company") as surety, on an indemnity bond, to recover $3930. The indemnity company filed general and special demurrers to the petition as amended; the court overruled the general demurrers, and all of the special demurrers except one; and to that judgment the indemnity company excepted.

The indemnity bond declared on was executed on November 16, 1939, pursuant to the terms of a contract executed November 9, 1939, by the contractor and the plaintiff. Under the terms of the latter document, Miller & Walden Inc. agreed to move for the plaintiff a residence from a certain lot in Greensboro, Georgia, and place it on the adjoining lands of Miss Nell Hall "in its present condition, with water, light, and sewer connections made as at present; and standing on a solid foundation, all to be acceptable to and accepted by said Miss Nell Hall." The consideration of this service was to be $325, "to be paid when the building has been moved and placed and accepted as above indicated." Under this same agreement the contractor was to build a filling-station for the plaintiff on the lot from which said residence was moved. This filling-station was to be built according to designated plans and specifications, to be used by the Sinclair Refining Company, and to be subject "to approval by, and acceptance by," that company. The contractor agreed to furnish all labor and material "used in the construction of said station, and in the moving of said present building." For the construction of the filling-station the contractor was to be paid $3605, payable as follows: "First party [contractor] shall each two weeks after construction work has begun, attach to a draft such paid bills as first party desires paid, with an affidavit that all material and labor used to such date has been fully paid for, and present same to Bank of Union Point, Union Point, Georgia, drawn against the account of second party [plaintiff], which amounts second party agrees to pay." This contract also stipulates that the contractor furnish, at its own expense, "a good and sufficient surety bond." The in-

demnity contract makes the contract of November 9, 1939, "a part thereof," and provides that "the condition of this obligation is such that if the principal [Miller & Walden Inc.] shall indemnify the obligee [Frank L. Mauney] against loss or damage directly caused by the failure of the principal faithfully to perform the contract, then this obligation shall be null and void; otherwise it shall remain in force; provided, however, this bond is executed by the surety, upon the following express conditions, which shall be precedent to the right of recovery hereunder." Among these express conditions are the following: 1. "The obligee shall, at the times and in the manner specified in the contract, fully comply with all the terms thereof, and if the obligee default in the performance of any matter or thing agreed or required in this bond, or in the contract, the surety shall thereupon be relieved of all liability hereunder. . . 8. None of the conditions or provisions contained in this bond shall be deemed waived or altered by the surety unless the written consent to such waiver or alteration be duly executed by its authorized officers and its seal be duly affixed thereto. . . 11. . . And the obligation of the surety is and shall be construed strictly as one of suretyship only."

The plaintiff bases his case primarily on the alleged negligent moving of the residence in question, and the alleged wrongful procuring by the contractor of the money to pay the bills for labor and material used to move the residence and construct the filling-station on drafts drawn by him on the Bank of Union Point without having attached thereto "paid bills" and affidavits that the material and work for which the drafts were drawn had been fully paid for. Our view is that the controlling question here is presented by the demurrer alleging that the petition shows that "the plaintiff did, without obtaining the written consent of this surety, as by its contract provided, change the terms of payment provided for in said contract."

Paragraph 9 of the petition avers that work under said contract "was to be fully completed within ninety days, to wit, by February 26, 1940." Paragraph 23 alleges that "Miller & Walden Inc. . . drew a draft for $1000, representing to such bank that such amount had been paid out *or would be used to pay bills* on filling-station being erected under the contract." (Italics ours.)

This paragraph further avers that "said contractor . . failed to attach thereto paid bills and affidavit and such draft was drawn by said contractor in violation of his contract and was a breach thereof for which both the contractor and his bondsman are liable." In paragraph 30 it is alleged that the contractor drew drafts aggregating $3900 "without complying with the requirement that paid bills and affidavit be attached to each of said drafts," and that "by reason of such breach plaintiff was damaged in full amount of such drafts." As already stated, the indemnity bond specifically provides that none of its conditions or provisions "shall be deemed waived or altered . . unless the written consent to such waiver or alteration be duly executed by its [surety's] authorized officers and its seal be duly affixed thereto;" and that "if the obligee default in the performance of any matter or thing agreed or required in this bond, or in the contract, the surety shall thereupon be relieved of all liability hereunder."

In the light of the entire petition, and especially in view of the fact that it nowhere alleges that any of the conditions or provisions of the bond were waived or altered with the written consent of the surety, as specifically provided in paragraph 8 of the bond, we do not think that the petition, properly construed, shows that any of the conditions or provisions of the bond were waived by the surety. Obviously the averment in paragraph 27 of the petition that plaintiff "resided at Newnan, Georgia, some 120 miles from Union Point, Georgia, and had no opportunity to see such draft before such bank paid same, and authorized its payment not knowing that such affidavit and paid bills were not attached," can not have the effect of absolving the plaintiff from his obligations under the bond. Counsel for defendant in error contends in his brief that the petition alleges that plaintiff "placed in the Bank of Union Point sufficient funds to pay contract price, and authorized this bank to pay drafts drawn if drafts had paid bills and affidavit attached," while counsel for plaintiff in error contend that, construing the petition most strongly against the pleader, it does not aver that plaintiff apprised the bank of any such condition. While a consideration of the petition as a whole fails to satisfy us that it avers that plaintiff advised the bank of the conditions under which the bills were to be paid, we think that if plaintiff's contention is correct it must be concluded that he,

acting by and through his authorized agent, the bank, paid out the money without complying with the requirements of the contract; and that if the contention of plaintiff in error is correct, plaintiff, by failing to apprise the bank of the conditions precedent to paying the money to the contractor, must be deemed to have negligently failed to comply with those conditions. In short, our view is that in either event the plaintiff failed to comply with the requirements of the bond and contract, and that such failure discharged the surety. The first division of the syllabus in *Lowndes Alliance Warehouse Co.* v. *Greene,* 17 *Ga. App.* 542 (87 S. E. 826), follows: "The sureties were entitled, as a matter of law, to have the contract strictly adhered to by the plaintiffs, as the liability of a surety is stricti juris; and, since the petition as amended shows that the plaintiffs failed to make payments to the contractors in conformity with the terms of the contract, which failure tended to increase the risk of the sureties on the bond, the sureties are discharged from all liability thereon. *Blackburn* v. *Morel,* 13 *Ga. App.* 516 (79 S. E. 492)." In the early decision of *Bethune* v. *Dozier,* 10 *Ga.* 235, 238, the court said: "No principle of law is better settled at this day, than that the undertaking of the surety, being one stricti juris, he can not, either at law or in equity, be bound farther or *otherwise,* that he is by the very terms of his contract; and that if the parties to the original contract think proper to change the terms of it without the consent of the surety . . the surety is discharged." And, "This rule will not be altered by the fact that the change in the contract, which was made without the knowledge or consent of the surety, nevertheless inured to the benefit of the principal and the surety. If the change is made without the knowledge or consent of the surety, the surety's complete reply is non haec in foedera veni." *Little Rock Furniture Co.* v. *Jones,* 13 *Ga. App.* 502 (2) (79 S. E. 375), citing *Hill* v. *O'Neal,* 101 *Ga.* 832 (28 S. E. 996). In headnote 4 of that same decision the court held "that a demurrer by the insurance company, setting up the novation and its consequent release, was properly sustained." In *Cloud* v. *Scarborough,* 3 *Ga. App.* 7 (2) (59 S. E. 202), the court said: "Proof of a loss by the surety is not required where his discharge is dependent upon an act of the creditor which has increased his risk, nor where it is claimed that the act of the creditor has operated to discharge the surety by exposing him to greater liability."

Applying the foregoing rules of law to the amended petition in the instant case, we hold that the court erred in overruling the general demurrer to the amended petition. And in view of this ruling we deem it unnecessary to pass upon the special demurrers that were overruled. ·

*Judgment reversed. MacIntyre and Gardner, JJ., concur.*