**L. B. GILMORE, Appellant,**

v.

**ROYAL INDEMNITY COMPANY, Appellee.**

**No. 16182.**

United States Court of Appeals Fifth Circuit.

Dec. 21, 1956.

Rehearing Denied Jan. 21, 1957.

C. Baxter Jones, Macon, Ga., A. C. Felton, III, John S. Averill, Jr., Montezuma, Ga., for appellant. Jones, Sparks, Benton & Cork, Macon, Ga., of counsel.

George C. Grant, T. Baldwin Martin, Macon, Ga., for appellee. Martin, Snow & Grant, Macon, Ga., of counsel.

Before HUTCHESON, Chief Judge, and BORAH and BROWN, Circuit Judges.

BORAH, Circuit Judge.

This is an appeal from a summary judgment entered against L. B. Gilmore in his suit against Royal Indemnity Company, the surety on a contractor's bond. On this appeal our sole function is to determine whether there was any genuine issue of material fact presented below, and, if not, whether the substantive law was correctly applied.

The bond upon which this suit is based was executed October 20, 1952, pursuant to the terms of a contract executed October 2, 1952, by the contractor, Frank Vincent, and the plaintiff. Under the terms of the latter document the contractor agreed to furnish all labor and material and to renovate and repair a certain hotel building in Montezuma, Georgia,

for the sum of $12,500 to be paid as follows: "$6,000 to be advanced weekly as the work progresses and the remainder to be paid in full when all the work is complete." The contract also provides that prior to each payment the contractor should present to the owner "a statement in writing from all persons who have done work or furnished material in connection with said building up to that time that they have waived any lien or liens they may have therefor or said contractor has given to the owner a sworn statement that the agreed price or reasonable value of the work done or material furnished has been paid as provided by Code 67–2001." The contract among other things also requires that the contractor give a surety bond payable to the "owner" for the faithful performance [1] of the contract according to the specifications which are made part of the contract, and the surety bond by reference makes the contract of October 2, 1952, a part thereof, but it does not contain any provision with respect to notice of claims, or how or when claims shall be made, or to what office or agent.

Plaintiff's complaint, as amended, asserts two claims for relief, the first of which is a simple contract action in which the following allegations are made: that the contractor failed to carry out the terms of the contract of October 2, 1952; that on January 20, 1953, plaintiff notified defendant surety company of the breach and demanded that defendant complete the work or pay the indemnity provided in the bond; that the defendant failed and refused to comply with this amicable demand and as a consequence plaintiff was obliged to employ another contractor to complete the work at a cost in excess of the original contract price; and that by reason of the delay occasioned by the contractor's breach plaintiff suffered a loss of use and occupancy and a loss of income. The prayer was for judgment in the sum of $12,500, the face amount of the bond, plus interest from the date of amicable demand. The second claim for relief likewise sets forth the contractor's breach and amicable demand, and in addition alleges, in substance: that upon notice to defendant's duly constituted agent and representative Cruger C. Harrold on December 30, 1952, that the contractor's work was not satisfactory defendant assured plaintiff that it would not sanction or accept the contractor's defective workmanship; that three weeks thereafter defendant dismissed the contractor and informed plaintiff that defendant would provide another contractor without further delay and "would guarantee a satisfactory completion of the job;" that defendant then secured a bid or detailed estimate from another contractor, but notwithstanding the fact that defendant took over the contract and agreed to complete the same, defendant has failed and refused to do so. And, that by reason of the foregoing defendant is indebted to the plaintiff in the sum of $20,000 plus interest, the full amount of plaintiff's loss. Attached to the complaint and made a part thereof were the contract of October 2, 1952, the surety bond, and a Power of Attorney attached thereto in which defendant constituted Cruger C. Harrold as its agent to make, execute and deliver in its behalf as surety, certain specified types of bonds and undertakings [2] the penal sum of which was limited to

1. The surety bond provides that the conditions of the obligation are such that if the principal, Frank Vincent, "shall well and truly keep, do and perform each and every, all and singular, the matters and things in said contract set forth and specified to be by the said Principal kept, done and performed at the time and in the manner in said contract specified, and shall pay over, make good and reimburse to the above named Obligee all loss and damage which said Obligee may sustain by reason of failure or default on the part of said Principal, then this obligation shall be void; otherwise, to be and remain in full force and effect."

2. The power of attorney provided that such bonds were "to be given for the following purposes only, to-wit:
"Guaranteeing the fidelity of persons holding places of public or private trust. Guaranteeing the performance of contracts other than insurance policies;

$150,000. In this connection it should be noted that neither the bond nor the power of attorney contained a non-waiver provision or any other express limitation on Harrold's authority.

In its responsive pleadings, the defendant admitted the contract of October 2, 1952, between plaintiff and the contractor, the execution and delivery of the surety bond, and specifically denied that Harrold had authority, as agent, to accept liability or to make any waiver in its behalf; and denied, or for want of sufficient information neither admitted nor denied, all other allegations of the complaint. Further, and by way of defense with respect to the first claim for relief, it was alleged that the bond was unenforceable because plaintiff had violated its conditions, the most important of which was that plaintiff had advanced payments to the contractor without obtaining from him a statement in writing from all persons who had done work or furnished material, waiving any lien, or a sworn statement that the agreed price or reasonable value of the work done or material furnished had been paid. As to the second cause of action, defendant alleged that it failed to state a claim upon which relief could be granted, and that it attempted to impose a liability on defendant not called for under the terms of the bond.

Before the case was set for hearing, defendant, in conformity with Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A., moved the court for summary judgment in its favor on two principal grounds: (1) that Harrold was never authorized to take over and complete the contract, inasmuch as he was a special agent whose authority was restricted to writing bonds and the limitation on his authority which was expressed in the Power of Attorney was or should have been known by the plaintiff;[3] and that if Harrold made such an agreement, which was denied, such agreement was not authorized and has never been ratified or approved by the defendant; and (2) that plaintiff deviated from the original contract by advancing to the contractor, prior to December 13, 1952, the sum of $8,300 without obtaining the statements required by the contract, and that this breach, as a matter of law, released defendant as surety on the bond. Attached to this motion were the affidavits of Henry L. Young, Assistant Regional Manager of the defendant surety company; Cruger C. Harrold; Harry A. Thornton, the contractor alleged by plaintiff to have submitted a bid or detailed specifications to Harrold during the negotiations between plaintiff and Harrold; James A. Haggerty, Field Representative for the surety company; and J. C. Ford, Claims Attorney in the defendant's Atlanta office. To this motion, counsel for plaintiff filed a nonverified response, unaccompanied by an affidavit, in which certain facts were admitted, but in the main the various statements contained in the affidavits submitted by defendant were denied and contradicted in detail. At the hearing which was had on the motion, there were presented to and considered by the court, all of the aforementioned pleadings together with the depositions of plaintiff and one R. E. Thomas, and certain exhibits which were not in affidavit form.

■ The question thus presented on the motion for summary judgment was whether the surety was released from liability on the bond by plaintiff's breach

---

guaranteeing the performance of insurance contracts where surety bonds are accepted by states and municipalities in lieu of actual deposits; and executing or guaranteeing bonds and undertakings required or permitted in all actions or proceedings or by law required."

3. By letter dated May 31, 1951, the defendant specifically limited Harrold's special agency in numerous particulars, among which were the following:

"No authority contained herein, and no special authority given by the Company for designated bonds, authorizes the execution of any supplementary agreements, waivers, consents or acceptances of changes in contracts, etc. Everything of that nature must be referred to the Company."

of its conditions, and if so, whether the surety has waived or is estopped from asserting that breach as a defense. We take it that appellant does not seriously contend that his breach of the aforementioned conditions of the bond did not release the surety. Indeed, the authorities which he cites, such as Hartford Accident & Indemnity Co. v. Mauney, 66 Ga.App. 403, 17 S.E.2d 885; Lowndes Alliance Warehouse Co. v. Greene, 17 Ga.App. 542, 87 S.E. 826, and Little Rock Furniture Co. v. Jones & Co., 13 Ga.App. 502, 79 S.E. 375, convincingly show that this is so. To the same effect are Mauney v. Hartford Accident & Indemnity Co., 68 Ga.App. 515, 23 S.E. 2d 490, and Blackburn v. Morel, 13 Ga. App. 516, 79 S.E. 492, 493. In the latter case the Court of Appeals of Georgia, speaking through Judge Russell, declared: " * * * the liability of a surety is *stricti juris*, and cannot be extended, and a surety is relieved by any act which tends to increase his risk; and whether in fact there is an increase of his risk or not, there is a breach of the contract."

Coming now to the question of waiver, it is conceded by appellant in brief, and rightly so, that Harrold did not have *actual* authority to take over and complete the contract and thereby to waive appellant's breach of the conditions of the bond. But this is not conclusive of the issue for under Georgia law a principal is bound to the extent of the apparent authority which he has conferred upon his agent and not by the actual or express authority when that differs from the apparent authority, Turner Bros. v. Clarke, 143 Ga. 44, 84 S.E. 116. And in Georgia as elsewhere when a principal by his acts or conduct makes it appear to a person of reasonable prudence and good faith that such agent has authority to perform a particular act, and a third person deals with the agent upon that assumption, the principal is estopped as against such third person from denying the agent's authority. Commercial Credit Corp. v. Noles, 85 Ga.App. 309, 69 S.E.2d 309.

Our next inquiry is whether or not there exist in this record any genuine issues of fact, for if any facts material to the issue of estoppel are in dispute the court was wrong in concluding as a matter of law that appellee was entitled to summary judgment. While we think it plain that the court, under Rule 56, should not have considered appellant's response and exhibits when not in affidavit form, we are nevertheless of opinion that the evidence which was properly received and considered on the motion for summary judgment shows that there was serious conflict as to whether the surety company had clothed Harrold with apparent authority to act as its claims agent, and also as to what Harrold actually did. It is appellant's story that he called appellee's office in Macon, Georgia, and spoke with some unknown party. What appellant said on this occasion cannot be determined from his deposition, but it otherwise appears from the record that he reported to Haggerty, appellee's field representative, that he was having some trouble with his bond, and that Haggerty referred him to Harrold who thereafter negotiated with appellant concerning the contractor's default. The evidence as to what transpired during their negotiations, including the representations which were made by Harrold, is in sharp conflict. Appellant's version is set forth in his amended complaint, the substance of which has been previously stated, and it is supported substantially by his deposition on cross-examination. But what is important on consideration of appellee's motion for summary judgment is the fact that appellant's version is controverted in every material particular, not only by the sworn affidavit of Harrold, but also the affidavits of Haggerty and Ford which were offered by appellee in support of its motion. It has long been the law of Georgia that under circumstances such as these where the facts relied on to establish an estoppel do not *unequivocally* show an estoppel *en pais*, the jury and not the judge, should determine whether the facts con-

stitute such an estoppel. Tune v. Beeland, 131 Ga. 528(3), 62 S.E. 976, and Rule 56 of the Federal Rules of Civil Procedure does not call for a different result. We are of the clear opinion that under Rule 56 the trial judge was required to deny the motion for summary judgment, for this case falls squarely within the well-settled general rule that the answers to questions relating to the scope and extent of the apparent authority of an agent to act as the representative of his principal are to be gathered from all of the facts and circumstances in evidence and that this is a question that should be determined by the triers of the facts. It is entirely possible that the weight of the evidence would be found on a trial to be with appellee, but the credibility of the witnesses and the weight to be given to their testimony must be determined after trial in the regular manner and not on motion for summary judgment.

Accordingly, the judgment of the District Court is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

JOHN R. BROWN, Circuit Judge (specially concurring).

I concur in reversal and for a full trial on the merits.

I think, however, that while, as so well stated by the Court, Harrold's authority to take over disposition of the claim and contract can be established by waiver and estoppel, this is too narrow a view. I think it can be estab-

lished that he had *actual* authority, expressed or implied.

The Power of Attorney (note 2, Court's opinion) was not the contract of agency between Surety and Harrold. This, as the surety industry well knows, was to establish in a manner permitting third parties, public agencies, banks, financial institutions, builders, etc. to have absolute assurance, positive authority to *bind* the company to the extensive obligations of a surety contract. As between Harrold, the Agent, and the Surety, it was not, nor was it intended to be, an outline of his general responsibility nor any limitation on his power as agent.

There is no magic in the relationship between a surety company and its agent. The agent's authority to buy or sell hogs, cotton, cattle, timber, oil, coal, eggs, wheat, or any other commodity, or issue insurance policies, may be partly written, partly oral with much of it in the sometimes weird realm of the customs of the trade. Here, the agency contract—so far as formally written— was the "Agency Agreement.[1]" Specifically authorizing Harrold (Agent) to solicit, write, issue and deliver fidelity, surety, bonds, and contracts, it then, by its own terms, recognized that he had a continuing authority and responsibility since he could *cancel* bonds in his discretion.

The letter of May 31, 1951 (note 3, Court's opinion) if a part of the underlying agreement between Surety and Agent, as it may well be, in no sense detracts from this for it was, as its heading [2] so plainly states instructions

---

1. This was dated November 4, 1949, but effective June 20, 1949, long prior to the formal Power of Attorney and provided: "The Company [Surety] hereby grants authority to the Agent * * * to solicit and submit applications for the classes of insurance and fidelity and surety bonds for which a commission is specified * * *; subject, however, to restrictions placed upon the Agent by the laws of the state or states in which such agent is authorized to do an insurance business; to issue and deliver policies,

bonds, certificates, endorsements and binders which the Company may, from time to time, authorize to be issued and delivered; to collect and receipt for premiums thereon or therefor; *to cancel such policies, bonds and obligations in the discretion of the Agent where cancellation is legally possible;* * * *" [emphasis supplied].

2. The caption of the letter was: "Limitations and *important instructions* in connection with power of attorney No. 12160 * * *" [emphasis supplied].

on *how* the Agent should exercise [3] the underwriting judgment and discretion necessarily reposed in one having such wide authority to bind the Company. Violation of instructions by an agent, failure to use wisely the same judgment or reach the same conclusions as would the principal, neither for manual laborers, truck drivers, nor insurance agents, is the equivalent of *lack* of authority.

In this setting, the conduct of the Surety is especially significant—not in putting it in a position where it is inequitable to assert lack of authority—but in showing that it considered [4] that questions and matters arising out of or under the building contract guaranteed by its surety bond should be handled by the Agent Harrold.

Such a person has real authority—actual authority. He has it by the acts and deeds of his principal. The person who has paid a substantial premium to that principal is entitled to look to that agent, as an appointed, designated agent, without running the sometime tortuous course of waiver and estoppel.

Next, and on the merits, Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, compels me to accept the Georgia rule.[5] But it does not compel me to predict that a Georgia Court would apply that rule to this building contract to vitiate the *entire* obligation of the Surety who has yet made no showing of any actual harm or prejudice. On the contrary, I would expect Georgia Courts merely to reduce, *pro tanto*, the amounts payable to the extent, if any, which prepayment by Gilmore to the Contractor may have actually prejudiced the surety.

I do this because the building contract itself contemplated that changes [6] would

3. E. g.: "In the *interest of sound business policy*, you are not authorized to execute any bonds whatsoever other than those specified herein and any violation may necessitate the Company holding you personally liable for any loss or expense it sustains."
    See also the following:
    " * * * Please observe these instructions and the limitations herein most carefully, and *notwithstanding* the fact that your power of attorney *may provide* for a *higher* amount, secure special authority from the Company for the execution of all bonds exceeding the amounts stipulated herein * * *
    "In no event do we desire you to execute any bond where such bond is given to succeed the bond of a previous surety, without first securing the authority of the Home Office. (This does not apply to fidelity or blanket bonds)" [emphasis supplied].
    which actually contradicts the broad authority specified in the Power of Attorney and thus suggests that, by the Power of Attorney, the Surety was attempting to create the *appearance* to outsiders of an authority greater than he actually had.

4. James A. Haggerty, Field Representative for the Surety with superintendence over Harrold's agency, in connection with Gilmore's call to Royal's listed office in Macon, Georgia, swore:
    "This person [Gilmore] inquired whether this was the Royal Indemnity Office and I * * * asked if there was anything that I might do to assist him. This person then stated that he was having some trouble about a bond which was written by the Royal Indemnity Company in Macon and I told him that I knew nothing about it but that the Royal Indemnity Company's agent in Macon who would have written said bond would be Cruger C. Harrold of the Edward B. Harrold Company.
    "I notified Mr. Harrold and he said that he would get in touch with this party * * *."

5. Hartford Accident & Indemnity Co. v. Mauney, 66 Ga.App. 403, 17 S.E.2d 885; Lowndes Alliance Warehouse Co. v. Greene, 17 Ga.App. 542, 87 S.E. 826; Little Rock Furniture Co. v. Jones & Co., 13 Ga.App. 502, 79 S.E. 375; Mauney v. Hartford Accident & Indemnity Co., 68 Ga.App. 515, 23 S.E.2d 490; Blackburn v. Morel, 13 Ga.App. 516, 79 S.E. 492, cited by the Court.

6. "Should the Owner [Gilmore] at any time during the progress of the work require any *alteration* of, *deviation* from, addition to, or omission in the *said contract*, he shall have the right and power to make such change or changes, and the same shall in no way injuriously affect or make void the contract, but the difference shall be added to or deducted from the amount of the contract, as the case may be, by a fair and reasonable valuation." [emphasis supplied].

and could be made. And it was this contract the Surety undertook to guarantee. If it be thought that this exposed the Surety to wide liabilities, the simple answer is that this was plainly evident and was apparently weighed in the underwriting appraisal by the Surety before accepting the risk. Moreover, this Surety, like its hundreds of competitors, writes surety bonds throughout the nation and seldom, if ever, is there now found, for compensated sureties, the rule of strict construction. 50 Am.Jur., Suretyship § 318; Vol. 9 Building and Construction Contracts, § 107 (Supp. 1956). And those familiar with demands of modern day finance, construction and operation contracts with public bodies and large industrial enterprises, know that it is a common thing for the surety, in the bond, or in the guaranteed base contract, to agree that changes can and will be made. Fort Worth Independent School Dist. v. Aetna Casualty & Surety Co., 5 Cir., 48 F.2d 1, 77 A.L.R. 222, certiorari denied 284 U.S. 645, 52 S.Ct. 24, 76 L.Ed. 548; Republic Nat. Bank & Trust Co. v. Massachusetts Bonding & Ins. Co., 5 Cir., 68 F.2d 445.

The Agreement, guaranteed by Surety, permitted the parties to it (Owner and Contractor) to require "deviation from * * * said contract." It could hardly have been a plainer statement that the contract would remain in full force and effect even though changes were made. The undertaking of the Surety then became, in effect, that it would guarantee performance of "the contract as therein provided or as modified by the parties." 9 Am. Jur., Building and Construction Contracts § 105; Vol. 50, Suretyship § 56; United States v. McMullen, 222 U.S. 460, 32 S.Ct. 128, 56 L.Ed. 269; Restatement of the Law, Surety and Creditor § 128 Comment C.

This is a normal, business-like arrangement especially for alteration and renovation of old buildings, and a voluntary authorized change, by implied acquiescence of both, as to the method of interim progress payments, was equally within the broad language of permissible contract changes and exposed the Surety to no more perils [7] than changes in physical work to be done.

Indeed, there is yet no showing that the contractor's default was due to failure or inability to pay claims of laborers and materialmen. For all that we know all such claims were scrupulously paid by contractor from the progress payments received, and his default was due to incompetence, faulty estimates, or extraordinary unanticipated obstacles as work progressed. If this were so, then the Surety, by a most flagrant and fortuitous technicality, escapes the performance of the undertaking which it sold for a profit. It has found sanctuary in the fine print without there ever being any fine print.

I think a Georgia Court would prevent that.

---

[7]. The risk to a surety is ultimately the financial capacity of the contractor either to do the work or exonerate the surety if there is default. This is measured by what the contractor has taken on. Here, by subsequent agreement between Owner and Contractor (alone and with no notice to Surety) the Contractor's obligation could have been increased 100%. For example, by cork floors in place of asphalt at an increase of $1,000.00; alumium windows in lieu of wooden frames at $1,000.00; acoustical ceilings in place of normal plaster at $1,000.00, and so on up to $12,000.00. In that case, the surety's risk is admittedly increased for it would then guarantee, up to the penalty sum of $12,000.00, the performance of a $24,000.00 contract. Yet, clearly, the base contract permitted this.