Day, J.
 

 The questions here presented are, first, whether the construction or improvement of a joint county ditch is a public improvement at public expense when about 98% of the cost thereof is assessed against property benefited thereby; second, whether a general assignment by a contractor of the proceeds of a public improvement contract, without the knowledge or consent of the surety, constitutes a material alteration of the contract, thereby discharging the surety from its obligations under its bond.
 

 Defendant contends that the provisions of Section 2365-1
 
 et seq.,
 
 General Code, requiring a condition for the payment of labor and material to be incorporated into the contractor’s bond, is not here applicable; that such statute relates only to public buildings, public works and public improvements, constructed, erected, altered or repaired at public expense; that “about 98% of the cost” of the ditch improvement was assessed against the private landowners' benefited thereby, and that only 2% of the total cost was assessed against the counties of Van Wert and Paulding; that, consequently, the improvement was not made at public expense, and that it was not, therefore, a public improvement.
 

 The contention that special assessments, levied against property benefited by a county ditch improvement and paid into the county treasury, are not public but private funds, was apparently inspired by the case
 
 *365
 
 of
 
 Loe
 
 v.
 
 State, ex rel. Platt, Pros. Atty.,
 
 82 Ohio St., 73, 91 N. E., 982, wherein it was held that moneys paid into the county treasury from proceedings for the construction of a county ditch did not constitute funds of the county. However, the rule there laid down was overruled in
 
 State, ex rel. Maher, Pros. Atty.,
 
 v.
 
 Baker,
 
 88 Ohio St., 165, 102 N. E., 732, wherein the court held that moneys' paid into the county treasury by virtue of proceedings for the location and construction of' a county ditch are public moneys.
 

 In the course of its opinion, the court, on page 178, said:
 

 “How public must money be before it is public enough to be embraced in this statute ?
 

 “In the first place, we take it that a county ditch is certainly a public matter.' Section 6443
 
 et seq.,
 
 General Code; Section 4447
 
 et seq.,
 
 Revised Statutes, all recognize it as a public matter. It is petitioned for by the public. The petition itself recites that the improvement is for the ‘public health, convenience and welfare,’ and the commissioners must so find upon their journal before the ditch may be constructed. The petition is addressed to the board of county commissioners. The legislation from one step to another is conducted by the board of county commissioners', the viewers appointed by them, and the county surveyor. The assessments are made by public officers and collected by public officers. The contract is let and supervised by the public officers. And yet it is seriously contended that it is a private transaction, or, at all events, the moneys in the hands of the county treasurer arising from this improvement and assessment upon the abutting landowners, is not within the scope, purpose and limitations of the statute.”
 

 And again on page 179, the court said:
 

 “From time immemorial ditches have been recognized as proper public uses. It would seem by a parity
 
 *366
 
 of reasons and logic that the funds contributed, no matter by whom, and paid into the public treasury would thereby become public funds within the meaning of the statute. So that we have ‘public’ as a word of qualification and characterization not only as to the use but as to the funds necessary to pay for the use.”
 

 With this view we are in accord.
 

 Under the provisions of Section 6492, General Code, the commissioners of each county are required to establish a general ditch improvement fund, into which the collections from all special assessments for benefits to property are to be paid. Such.fund is a public fund.
 

 Section 6493, General Code, provides that;
 

 “From the general ditch improvement fund, except as otherwise provided by law, all costs and expenses of improvement under this chapter [Sections 6442 to 6508, General Code] shall be paid, including contract prices of construction and the costs of locating the improvement. No warrants shall be drawn, to be paid from such fund, unless it contains a sufficient amount not otherwise specifically appropriated to pay the same.
 

 “The letting and approving of any contract for an improvement shall be deemed a specific appropriation of the amount of such obligation, and such amount shall be set apart for the purpose of such payment, and contingently charged against said fund. If, at any time, said fund contains the proceeds of bonds issued and sold under this chapter, then said fund shall not be depleted below the obligations incurred by such bond issue or issues’, unless assessments or levies have been made or ordered made, and in sufficient amount to redeem the same as they fall due. If at any time obligations legally incurred exceed the amount of said improvement fund, an amount of the general revenue funds in the county treasury, unless otherwise
 
 *367
 
 appropriated, equal to the deficiency, may by resolution of the board of commissioners, be transferred to the general ditch improvement fund.”
 

 To reimburse this fund for expenditures made for construction of a ditch improvement, special assessments may be levied against the property benefited thereby to the extent of such benefit. The special assessment money paid into such fund becomes public money, and cost of construction paid out therefrom is public cost and expense. The fact that the assessment made to reimburse the fund was to the extent of 98% of the cost of construction expended, does not render the improvement one at private expense. The test is not the amount of the assessment, but whether the assessment funds out of which the cost of improvement is paid are public funds, and we so hold.
 

 Defendant, in its reply brief, states: “The question is not whether the ditch was of a public character, but whether the contract was for the construction of a public improvement at the expense of the county.”
 

 From this we gather that defendant does not raise the question whether the construction of a ditch is a public improvement. However, to foreclose any possibility of doubt upon that question, suffice it to say that the law in this state is that such improvement is a public improvement.
 
 Reeves
 
 v.
 
 Treasurer of Wood County,
 
 8 Ohio St., 333;
 
 Chesbrough
 
 v.
 
 Commissioners,
 
 37 Ohio St., 508;
 
 Lake Erie & Western Rd. Co.
 
 v.
 
 Commrs. of Hancock County,
 
 63 Ohio St., 23, 57 N. E., 1009;
 
 Bd. of Commrs. of Mercer County
 
 v.
 
 Deitsch,
 
 94 Ohio St., 1, 113 N. E., 745.
 

 We now come to a consideration of defendant’s' contention that the provisions of Section 2365-1
 
 et seq.,
 
 General Code, requiring a condition for the payment of labor and material to be incorporated into the contractor’s bond, are not here applicable. Section 2365-1, General Code, provides:
 

 
 *368
 
 “That when public buildings or other public works or improvements are about to be constructed, erected, altered or repaired under contract, at the expense of the state, or any county, city, village, township or school district thereof, it shall be the duty of the board, officer or agent, contracting on behalf of the state, county, city, village, township, or school district, to require the usual bond-as provided for in statute with good and sufficient sureties,
 
 with cm additional obligation for the payment by the contractor, and by all subcontractors, for all labor performed or materials furnished in the construction, erection, alteration or repair of such building, works or
 
 improvements.” (Italics ours.)
 

 Section 2365-3, General Code, provides:
 

 “Any person, firm or corporation to whom any money shall be due on account of having performed any labor, or furnished any material in the construction, erection, alteration or repair of any such building, work or improvement, at any time after performing such labor or furnishing such material, but not later than ninety days after the acceptance of such building, work or improvement by the duly authorized board or officer, shall furnish the sureties on said bond, a statement of the amount due to any such person, firm or corporation. No suit shall be brought against said sureties on said bond until after sixty days after the furnishing of said statement. If said indebtedness shall not be paid in full at the expiration of said sixty days, said person, firm or corporation may bring an action in his own name upon such bond, as provided in Sections 11242 and 11243 of the. General Code, said action to be commenced not later than one year from the date of acceptance of said building, work or improvement.”
 

 Section 2365-4, General Code, provides:
 

 “The bond herein provided for shall be in substan
 
 
 *369
 

 tially the following form, and recovery of any claimant thereunder shall be subject to the conditions and provisions of this act to the same extent as if such conditions and provisions were fully incorporated in said bond form:
 

 “Know All Men By These'Presents, that we, the undersigned........., as principal and.......•.. as sureties, are hereby held and firmly bound unto...... ......in the penal sum of......... dollars, for the payment of which well and truly to be made, we hereby jointly and severally bind ourselves, our heirs, executors, administrators, successors and assigns.
 

 “Signed this.........day of.........19..... “The condition of the above obligation is such, that whereas the above named principal did on the........ day of.........., 19....., enter into a contract with .......,..., which said contract is made a part of this bond the same as though set forth herein;
 

 “Now, if the said ......... shall well and faithfully do and perform the things agreed by......... to be done and performed according to the terms of said contract; and shall pay all lawful claims of subcontractors', material men and laborers, for labor performed and materials furnished in the carrying forward, performing or completing of said contract; we agreeing and assenting that this undertaking shall be for the benefit of any material man or laborer having a just claim, as well as for the obligee herein; then this obligation shall be void; otherwise the same shall remain in full force and effect; it being expressly understood and agreed that the liability of the surety for any and all claims hereunder shall in no event exceed the penal amount of this obligation as herein stated.
 

 “The said surety hereby stipulates and agrees that no modifications, omissions, or additions, in or, to the terms of the said contract or in or to the plans or speci
 
 *370
 
 fications therefor shall in any wise affect the obligation of said surety on its bond.” (Italics ours.)
 

 These statutory provisions relate and apply to public improvements, within which classification comes' the construction of county ditch improvements. A contractor’s bond, given under these provisions, must comply therewith and must incorporate “an additional obligation for the payment by the contractor, and by all subcontractors, for all labor performed or materials furnished in the construction, erection, alteration or repair of such building, works or improvement.”
 

 The contractor’s bond here furnished omitted to include such additional obligation. The question now is whether the statutory provisions with respect to such additional obligations can be read into the bond and treated as a part thereof.
 

 In
 
 Southern Surety Co.
 
 v.
 
 Chambers,
 
 115 Ohio St., 434, 154 N. E., 786, it was held that the provisions of Section 2365-1
 
 et seq.,
 
 General Code, are to be read into the bond given pursuant thereto, and that recovery thereunder for labor performed and material furnished is to be allowed notwithstanding the fact that the obligation with respect thereto is not contained in the bond.
 

 “Under Section 2365-1
 
 et seq.
 
 of the General Code, a bond given by a compensated surety in connection with a contract for the erection of a public building, which agrees to indemnify a board of education of a municipality for loss occasioned in the erection of the school building in question, but fails to comply with the provisions of Section 2365-3
 
 et seq.,
 
 that such a bond shall contain an additional obligation for the payment by the contractor and by all subcontractors for all labor performed or materials furnished in the construction, erection, alteration, or repair of such building, works, or improvements, is available for recovery by material men and subcontractors for all labor per
 
 *371
 
 formed or materials furnished in the construction, erection, alteration or repair of such buildings^ works or improvements, regardless of the terms and conditions written into the bond by the contracting parties.”
 
 Southern Surety Co.
 
 v.
 
 Chambers, supra.
 

 In
 
 American Guaranty Co.
 
 v.
 
 Cliff Wood Coal & Supply Co.,
 
 115 Ohio St., 524, 155 N. E., 127, the court laid down the following rules :
 

 “1. Where bond is given by 'a compensated surety in connection with a contract for the erection of a public school building, in the amount required under Section 2365-2, of the General Code, the bond is given pursuant to Sections 2365-1 to 2365-4, inclusive, of the General Code, and even though it does not in all of its terms comply with the statute, it is controlled by and subject to the provisions of the statute with regard to recovery for all labor performed or materials furnished in the construction of such building.
 

 “2.
 
 When parties execute a bond pursuant to Sections 2365-1 to 2365-4, inclusive, of the General Code, they are chargeable with notice of the provisions of the statute, and material men and subcontractors may avail themselves of the security of the bond although they are not expressly named therein.”
 

 To the same effect, see
 
 American Guaranty Co.
 
 v.
 
 Cincinnati Iron & Steel Co.,
 
 115 Ohio St., 626, 155 N. E., 389; 8 American Jurisprudence, 708, 723, Sections 4 and 38.
 

 A contractor’s bond, given for the full and faithful performance of a contract for a public improvement, will be construed with reference to the statute pursuant to which it is given, and any provision omitted therefrom, which is required by statute to be included therein, will be read into the bond and deemed as1 fully a part thereof as if expressly therein written. This is so on the theory that the additional obligation required to be included in the bond was intended by the Legis
 
 *372
 
 lature for the protection and benefit of laborers, material men and subcontractors, and that the contractor and surety, in giving the' bond, intended to comply with the statutory provisions requiring such obligation.
 

 Consequently the bond herein questioned inures to the benefit of those who performed the labor and furnished material to the contractor in connection with the construction of the ditch improvement. The proceeds of this contract were assigned by Boos to the bank.
 

 It is not alleged in the petition or answer that the proceeds were to be disbursed by the bank to laborers and .material men. In fact, it is not alleged to whom or for what purpose the proceeds were to be disbursed under the assignment. The bank therefore would have the right to recover from the Sun Indemnity Company the amount of claims assigned to the bank by laborers and material men, and the contention that the bank was a mere volunteer if it paid out more than was collected by it can not be supported by the allegations in the petition. In this respect the facts distinguish it from those found in
 
 State, ex rel. Southern Surety Co.,
 
 v.
 
 Schlesinger,
 
 114 Ohio St., 323, 151 N. E., 177, 45 A. L. R., 371.
 

 We are now brought to the question whether the •assignment by the contractor of the proceeds of his contract, without the consent of his surety, constitutes a material alteration of the contract.
 

 The general rule is that when a contract, for the performance of which a bond is given, is essentially varied in its terms', without the consent of the surety, so that it becomes a new contract, it will be deemed to be a material alteration, operating as a discharge of the surety fróm his obligation under the bond. 21 Ruling Case Law, 1004, Section 53.
 

 A surety is bound by the terms of the contract
 
 *373
 
 which were contained therein at the time the bond was executed, but is not bound by such terms as were thereafter added, without his consent; the theory being that when new terms are added a new contract results, for the performance of which no bond was given. Has a new contract here resulted from the contractor’s assignment of the proceeds of his contract? By the assignment, the terms of the contract have not been varied in any essential respect, and consequently, no new contract resulted therefrom. The surety’s' responsibility has in no manner been varied — neither increased nor decreased.
 

 “ A paid surety will not be released from his obligation of suretyship by changes in the contract guaranteed by him unless such changes operate injuriously to affect materially his' rights and liabilities. ’ ’
 
 London & Lancashire Indemnity Co.
 
 v.
 
 Bd. of Commrs. of Columbiana County,
 
 107 Ohio St., 51, 140 N. E., 672.
 

 An assignment by a contractor, of the proceeds of a public improvement contract, without the knowledge or consent of a compensated surety, does not constitute a material alteration of the contract sufficient to work a discharge of the surety from its obligation under the bond.
 

 Judgment affirmed.
 

 Weygandt, C. J., Matthias, Zimmerman, Williams, Myers and Gorman, JJ., concur.