### HOCHEVAR et al. v. MARYLAND CASUALTY CO.

No. 8266.

Circuit Court of Appeals, Sixth Circuit.

Oct. 15, 1940.

George C. McKelvey, of St. Clairsville, Ohio (Ross Michener, of Bridgeport, Ohio, and Geo. C. McKelvey, of St. Clairsville, Ohio, on the brief), for appellants.

Earl R. Lewis, of St. Clairsville, Ohio (F. E. Pausch, of Baltimore, Md., and Thornburg & Lewis, of St. Clairsville, Ohio, on the brief), for appellee.

Before HICKS, SIMONS, and ARANT, Circuit Judges.

ARANT, Circuit Judge.

The Commissioners of Belmont County, Ohio, entered into a written contract with the Burd Construction Company on June 20, 1928, for the grading and paving of a section of county road by November 1, 1929. The County was to retain fifteen per cent of monthly estimates until completion of the work.[1] Appellee executed a bond, conditioned to be void upon performance of the

---

[1] The sections of the contract pertinent to payment are as follows:

"12. That no estimate shall be made by said Engineer until there is filed with said Engineer the consent to pay off the material men for materials furnished, and laborers employed on said improvement, who have not been paid in full for such labor and material on said improvement together with the affidavit of the Contractor that said consent contains the signature of all the persons who have furnished materials or performed labor on said improvement; or until there is filed with said estimate the affidavit of the Contractor that all material fur-

contract and payment by the Burd Company of "all lawful claims of subcontractors, materialmen, and laborers for labor performed and materials furnished in the carrying forward, performing or completing of said contract."

A subcontractor had done the grading, and the Burd Company had moved its machinery on to do the paving, when it was requested, in the midsummer of 1929, to begin work one hundred feet from an intersecting state highway that was also being paved, because its grade had not yet been established. As work progressed, estimates were approved and, after deduction of fifteen per cent, paid by the County.

The road was opened to traffic November 11, 1929, after the Company had paved all but the one hundred foot strip. A month later it requested a final estimate and payment of the retained percentages, which then amounted to $18,278.34. Relying upon advice of counsel that clause 10 [2] of the contract made Ohio G. C. § 6947-1 [3] applicable and upon the contractor's promise to pay immediately all materialmen and laborers, some of whom had already given notice of their claims, but none of whom had filed the attested accounts necessary to perfect a statutory lien against the funds in the County's hands, [4] the Commissioners, without knowledge or consent of appellee, paid the contractor the retained percentages, minus $1,000 estimated necessary to complete the paving and fifteen per cent additional as required by statute.

The contractor moved its equipment to another job outside the state. Upon its later refusal to complete the strip, the County demanded that appellee do so, but appellee refused and immediately brought this suit, joining as defendants the Burd Company, the County Commissioners and various unpaid laborers and materialmen. The $1,150 retained by the County was used to complete the paving.

The District Court awarded judgments against appellee in favor of all materialmen and laborers who established claims; and also awarded appellee a judgment against the County for an amount equalling the judgments against appellee, on the theory that, by prematurely paying the percentages that had been retained pursuant to the con-

---

nished and labor performed on the improvement for which the estimate is made have been paid. No final estimate for work done shall be paid until the work has been viewed and accepted by the Board of Commissioners of Belmont County and the said Engineer, and the formal acceptance of said work has been entered upon the 'Journal' of said Board."

"15. That it is further agreed that during the proper progress of the work, when there is filed with the Engineer, the consent to pay, together with the proper affidavit, or the proper affidavit of the party of the first part in accordance with the terms of Section 12 hereof, the said engineer shall furnish an estimate of work completed and materials furnished up to and including the last day of the month, and upon the approval of said estimate by the party of the second part, the party of the first part shall receive upon the tenth (10) day of the following month, payment for said work, less fifteen (15%) per cent of the estimated amount to be retained by party of the second part until the completion of work under this contract."

[2] "10. That it is further stipulated that all laws and regulations now in force in Belmont County respecting and regulating public improvements, shall be a part and parcel of this contract."

[3] "6947-1. Payments of estimates shall not exceed 90 per cent.—The payment of the cost of the construction of such improvement shall be made as the work progresses upon estimates made by the county surveyor. Except as hereinafter provided, no payment on account of the contract for any improvement shall before the completion of said contract exceed ninety per cent. of the value of the work performed to the date of such payment, and except as hereinafter provided ten per cent. of the value of the work performed shall be held until the final completion of the contract in accordance with the plans and specifications. * * * When the retained percentage plus the difference between the contract price and the estimates allowed exceeds by more than fifteen per cent., the estimated cost of completing the work as determined by the county surveyor, the county surveyor may, if he deem it proper, allow to the contractor an estimate equal to all or any part of said excess sum, retaining not less than the estimated cost of completing the work as determined by him plus fifteen per cent. thereof. Where a portion of a section of highway covered by a contract is completed and opened to traffic, all retained percentages held in connection with such portion of said section shall be forthwith released and paid to the contractor."

[4] See Ohio G.C. §§ 8324, 8325.

tract, the County violated its duty to appellee.

■ We are of the opinion that judgment was properly rendered against the County. The percentages to be retained were to secure performance of the contract; as they mounted, the security increased. That the surety is entitled to the benefit of security held by the obligee is too elementary to require citation of authority. The security for which the surety knew the obligee had stipulated must have entered into its measurement of the risk involved; and the surety was entitled to believe that the obligee would deal with its security as do holders of security generally, and as expressly provided in the contract. Release of the security increased the risk the obligee knew the surety contemplated when the bond was executed. When the obligee sues the surety, it is generally agreed that failure to retain the percentages is a pro tanto defense to the surety; and some contend that the surety should have a total defense because of the impossibility of determining with exactitude the degree to which premature payment removes the incentive to perform. However, the obligee's premature payment of retained percentages cannot affect the rights of third party beneficiaries against the surety. The percentages were to be retained by the County in this case to assure performance of all the contractor's obligations. From paragraphs 12 and 15 of the contract, it is clear that the parties contemplated that each estimate should be preceded by the filing with the County Engineer of either a consent that materialmen and laborers be paid or an affidavit that they had been paid. Implicit therein is a promise that no estimates would be paid until these conditions had been satisfied. Fidelity & Deposit Co. of Maryland v. Board of Education, 202 N.C. 354, 162 S.E. 763; Robinson Mfg. Co. v. Blaylock, 192 N.C. 407, 135 S.E. 136. See also National Surety Co. v. County Board of Education, 4 Cir., 15 F.2d 933; Claiborne Parish School Board v. Fidelity & Deposit Co., 5 Cir., 40 F.2d 577; Fort Worth Independent School District v. Aetna Casualty & Surety Co., 5 Cir., 48 F.2d 1, 77 A.L.R. 222; American Surety Co. v. Plank & Whitsett, 159 Va. 1, 165 S.E. 660; United States Fidelity & Guaranty Co. v. City of Montesano, 160 Wash. 565, 295 P. 934. See Corbin, "Third Parties as Beneficiaries of Contractors' Surety Bonds," 38 Yale Law Jour. 1.

■ The decision of the Ohio Court of Appeals in Village of Beachwood v. Ohio Casualty Insurance Company, 47 Ohio App. 212, 191 N.E. 797, is not applicable, inasmuch as the Village was not obligated by the contract, as was the County here, to retain the percentages until materialmen and laborers were paid, and, because of the dissimilar facts involved, no importance should here be attached to statements therein that the rights of the surety can rise no higher than those of materialmen or laborers; nor could we extend the rule of that case to this without disregarding the implications of State v. Schlesinger, 114 Ohio St. 323, 151 N.E. 177, 45 A.L.R. 371, decided by the Supreme Court of Ohio, whose declarations alone are binding upon us in this case. West v. American Telephone & Telegraph Co., 6 Cir., 108 F.2d 347; Summers v. Travelers Insurance Co., 8 Cir., 109 F.2d 845, 127 A.L.R. 1336; New York Life Ins. Co. v. Stoner, 8 Cir., 109 F.2d 874. The Ohio cases refusing to impose quasi-contractual duties upon counties are not applicable, because the County's duty arises from express provisions in its contract.

■ Inasmuch as appellee's right that the County retain the percentages does not depend upon subrogation, it is immaterial that laborers and materialmen had not perfected statutory liens; the bond required appellee to pay them nonetheless. Ohio G. C. § 2365-4; Southern Surety Co. v. Standard Slag Co., 117 Ohio St. 512, 159 N.E. 559; Van Wert Nat. Bank v. Roos, 134 Ohio St. 359, 17 N.E.2d 651.

It is urged that the following provisions in the bond prevent the imposition of obligations upon the County:

"The said surety hereby stipulates and agrees that no modifications, omissions or additions, in or to the terms of said contract or in or to the plans or specifications therefor, shall in any wise affect the obligations of said surety on its bond.

"Provided, That the giving of any extension of time for performance of the contract or other forbearance, on the part of the said County or the Board of County Commissioners thereof, shall not in any way release the principal and surety, or either or any of them, their heirs, executors, administrators, successors or assigns, from liability hereunder, notice to the surety of any such extension or forbearance being hereby waived and, provided, that the sure-

ty hereby further waives compliance on the part of the County and said Board of County Commissioners with the provisions of any lien law applicable to laborers, contractors, sub-contractors or material men."

We are of· the opinion that this general language should not be construed to waive compliance with the specific provisions of the retention clause, inasmuch as proper effect can consistently· be given to both. It was so held in Fort Worth Independent School District v. Aetna Casualty & Surety Co., supra, in which the facts were almost identical.

A. N. Delaney, a materialman joined as defendant, filed a cross petition and appeals from the disallowance of claims asserted against appellee for kerosene, gasoline, oil, grease, coal and miscellaneous items such as tools, nails, storage and telephone service. He contends that these claims should have been allowed under G. C. § 8324-1, which became effective after the contract and bond were executed but before the items were furnished.

The scope of a surety's undertaking is measured by the bond and statutes applicable when it is executed; there can be no expansion by subsequent statutory changes. Von Hoffman v. City of Quincy, 4 Wall. 535, 18 L.Ed. 403; International Steel & Iron Co. v. National Surety Co., 297 U.S. 657, 56 S.Ct. 619, 80 L.Ed. 961; U.S.Const., Art. I, Section 10. The bond imposed an obligation to materialmen no broader in scope than· the statute requiring its execution. The surety became liable only for material or supplies that went into or became a part of the completed work. Royal Indemnity Co. v. Day & Maddock Co., 114 Ohio St. 58, 150 N.E. 426, 44 A.L.R. 374. It appears that some of the items for which Delaney sought to recover were used in work not covered by appellee's bond. He had the burden of showing the extent and validity of his claims, and, since he admitted that he could not separate the parts attributable to the contract secured by appellee's bond, there was no error in the complete disallowance of these items.

Delaney also contends that the District Court erred in denying his motion to amend his cross petition by the addition of a claim for interest. This motion was filed long after hearing by the Court, ap-

pointment of a special master and filing of his report showing that the claims were unliquidated. There was no abuse of discretion.

Judgment affirmed.