GRAYBAR ELECTRIC CO., INC., PLAINTIFF, v. MANUFACTURERS CASUALTY CO., A CORPORATION, DEFENDANT AND THIRD-PARTY PLAINTIFF-APPELLANT, v. BOARD OF EDUCATION OF THE CITY OF PLAINFIELD, A MUNICIPAL CORPORATION, THIRD-PARTY DEFENDANT-RESPONDENT.

Argued April 23, 1956—Decided May 14, 1956.

518

*Mr. Alastair J. Sellar* argued the cause for the appellant (*Messrs. Mead, Gleeson, Hansen & Pantages,* attorneys).

*Mr. Frank H. Blatz* argued the cause for the respondent.

The opinion of the court was delivered by

JACOBS, J. In *Graybar Electric Co. v. Manufacturers Cas. Co.,* 37 *N. J. Super.* 284 (*Law Div.* 1955), Judge Waugh held that the Casualty Company could not prevail on its third-party claim against the Board of Education of the City of Plainfield. The Casualty Company appealed to the Appellate Division and we certified under *R. R.* 1:10–1(*a*).

On May 21, 1953 the board of education entered into a contract with Mr. Epstein (trading as the N. R. Epstein Electric Company) for additions and alterations to the electrical system in the Evergreen School of Plainfield. The contract provided that monthly payments would be made to the contractor, based on 90% of the estimated cost of the completed work at the end of each month as certified by the engineer, and that payment of the retained percentage would be made 60 days after final date of acceptance. Mr. Epstein completed his work and submitted his final invoice under date of October 7, 1953. This invoice bore the notation "All work completed as per plans and specifications" and was approved by the consulting engineers under date of October 29, 1953. At its November 17, 1953 meeting the board of education approved payment of Mr. Epstein's final invoice and payment in full was thereupon made. Under date of April 6, 1954 counsel for Graybar Electric Co., Inc., a subcontractor which had supplied materials to Mr. Epstein,

made inquiry of the board of education as to whether the contract had been completed and the work accepted. On May 4, 1954 Mr. Epstein filed a voluntary petition in bankruptcy and on June 7, 1954 the board of education adopted a resolution which was stated to have been "made necessary by the bankruptcy of the contractor." This resolution set forth that whereas the Epstein Electric Company had substantially completed the contract for electrical work in October 1953 and whereas final payment was approved on November 17, 1953, "Now therefore, be it Resolved that the work covered by the said contract dated May 21, 1953, be and hereby is accepted as completed by the Board of Education."

On September 28, 1954 the Graybar Electric Co., Inc., instituted its action against the Manufacturers Casualty Company which had issued its bond No. 501349 providing for the faithful performance by Mr. Epstein of his contract for electrical work at the Evergreen School. Graybar's complaint alleged that Mr. Epstein had failed to pay for electrical supplies and materials which it had delivered to him and which were used in the Evergreen School and that the Manufacturers Casualty Company was liable therefor under the terms of its bond. Thereafter the Casualty Company obtained leave to file a third-party complaint against the board of education, alleging that under the terms of the contract dated May 21, 1953 the board was obligated to retain 10% ($4,394) of the total sum due under the contract until 60 days after final date of acceptance; that the board failed to do so but made premature payment instead; and that consequently the Casualty Company should have judgment in the sum of $4,394 against the board to be applied towards satisfaction of Graybar's claim. The Casualty Company settled Graybar's claim by payment of $11,846.50; its claim against the board for reimbursement to the extent of $4,394 was denied by Judge Waugh who sat without a jury in accordance with an express waiver (cf. R. R. 4:39) and who decided the cause on the basis of facts stipulated by the parties.

The Casualty Company asserts that the retained percentage provision was not only for the benefit of the board but was also for the benefit of lien claimants and itself as surety. See *Meyer v. Standard Accident Ins. Co.*, 114 *N. J. L.* 483, 490 (*E. & A.* 1935); *Jersey City Water Co. v. Metropolitan Const. Co.*, 76 *N. J. L.* 419, 422 (*Sup. Ct.* 1908). *Cf. Guttenberg v. Vassel*, 74 *N. J. L.* 553 (*E. & A.* 1907). It points out that if the board had not actually made the final payment, the unpaid balance due on the contract would still be available for its indemnification on well settled equitable principles. See *National Surety Corp. v. Barth*, 11 *N. J.* 506, 510 (1953); *Stulz-Sickles Company v. Fredburn Const. Corp.*, 114 *N. J. Eq.* 475, 477 (*Ch.* 1933). *Cf. Bankers Title & Abstract Co. v. Ferber Co.*, 15 *N. J.* 433 (1954); *Standard Accident Ins. Co. v. Pellecchia*, 15 *N. J.* 162 (1954). And it relies heavily on out-of-state cases where the surety was permitted to recover from the public agency upon a showing that the prepayment in departure from the terms of the contract actually served to prejudice the surety which had been required to pay lien claimants. See *Fort Worth Independent School Dist. v. Aetna Cas. & Sur. Co.*, 48 *F. 2d* 1, 4, 77 *A. L. R.* 222 (5 *Cir.* 1931), *certiorari* denied 284 *U. S.* 645, 52 *S. Ct.* 24, 76 *L. Ed.* 548 (1931); *Hochevar v. Maryland Casualty Co.*, 114 *F. 2d* 948 (6 *Cir* 1940). *Cf. Corporation of President etc. v. Hartford Acc., etc., Co.*, 98 *Utah* 297, 95 *P. 2d* 736, 741 (*Sup. Ct.* 1939); *Aetna Casualty & Surety Co. v. Robertson Lumber Co.*, 3 *S. W. 2d* 895 (*Tex. Civ. App.* 1928); *American Surety Co. v. Plank & Whitsett*, 159 *Va.* 1, 165 *S. E.* 660 (*Sup. Ct. App.* 1932). See also *Arant, "Rationale of the Rule That An Obligee's Premature Payment Discharges His Surety,"* 80 *U. Pa. L. Rev.* 842 (1932); *Note, "Payments or advancements to building contractor by obligee as affecting rights as between obligee and surety on contractor's bond,"* 127 *A. L. R.* 10 (1940).

Judge Waugh did not deny that the foregoing represented general principles ordinarily applicable in the field of construction bonds. He noted, however, that the bond in

the instant matter was in a special statutory form and embodied, in strict compliance with *N. J. S.* 2*A* :44–147, an express provision that the surety "stipulates and agrees that no modifications, omissions or additions in or to the terms of the said contract or in or to the plans or specifications therefor shall in anywise affect the obligation of said surety on its bond." And he found, in this broad phraseology, a legislative intent that the surety be held liable without recourse against the public agency "no matter what alteration, omission or addition the board and the contractor may make in or to the terms of the contract." The Casualty Company complains about the sweeping nature and adverse effects of this holding and points out that it fixed its premium rates "on the theory that there is some stability to the contract between the parties." It urges that the quoted language in *N. J. S.* 2*A* :44–147 be construed as applicable "only to individual and slight modifications, omissions, and additions in the terms of the contract between the principal and the public agency." But this construction would seem to involve a rewriting of the legislation. The Casualty Company's undertaking was a voluntary one which it entered into in the course of its business and with full awareness of the broad terms of *N. J. S.* 2*A* :44–147; the narrowing of those terms in the manner suggested by the Casualty Company must be sought from the Legislature rather than the courts. While there may be other more plausible avenues of construction (*cf. Corporation of President etc. v. Hartford Acc., etc., Co., supra; Maryland Casualty Co. v. Eagle River Union Free High School Dist.,* 188 *Wis.* 520, 205 *N. W.* 926, 929 (1925)), we shall not pursue them since they have not been adequately briefed or argued and we are satisfied that the judgment below must be affirmed on an independent ground.

 Although Judge Waugh did not make any factual determination as to the final date of acceptance we shall, in the interests of justice, now do so on the record before us which embodies the facts stipulated by the parties. See *Const.* 1947, *Art.* VI, *Sec.* V, *par.* 3; *R. R.* 1:5–4; *City of*

*Asbury Park v. Department of Civil Service,* 17 *N. J.* 419,
423 (1955). *Cf. State v. Catalano,* 30 *N. J. Super.* 343,
348 (*App. Div.* 1954). Our courts have held that the date
of acceptance within the meaning of the pertinent provision
of the statute and the terms of the construction contract is
a factual one to be determined by the appropriate trier of
the facts. See *Collins v. Metropolitan Casualty Ins. Co.,*
114 *N. J. L.* 93, 98 (*E. & A.* 1935); *Newman v. Maryland
Casualty Co.,* 112 *N. J. L.* 122, 128 (*E. & A.* 1934); *cf.
Johnson Service Co. v. Seaboard Surety Co.,* 112 *N. J. L.*
493 (*E. & A.* 1934); *Fidelity & Deposit Co. of Maryland v.
Storr,* 115 *N. J. Eq.* 150, 157 (*E. & A.* 1934). If the
acceptance is conditional or incomplete it is ineffective. See
*Yale & Towne Mfg. Co. v. Aetna, etc., Co.,* 110 *N. J. L.* 592,
594 (*E. & A.* 1933); *Williamsport Planing Mill Co. v.
Maryland Casualty Co.,* 129 *N. J. L.* 333, 335 (*Sup. Ct.*
1943); *Paul H. Jaehnig, Inc., v. Standard Accident Ins. Co.,*
18 *N. J. Super.* 536, 540 (*Cty. Ct.* 1952). If it is uncondi-
tional and complete it is effective though not embodied in
a formal resolution couched in language of acceptance. See
*Fidelity & Deposit Co. of Maryland v. Storr, supra; New-
man v. Maryland Casualty Co., supra.*

 In the instant matter we are satisfied that there was
unconditional and complete acceptance of the contractor's
work on November 17, 1953. Prior thereto all of the work
had actually been completed and the final invoice bearing
the notation "All work completed as per plans and specifica-
tions" had been submitted and had been approved by the
consulting engineers. On November 17, 1953 the board
unanimously approved payment of the contractor's invoice
and it was thereupon paid. Although it would have been
better practice to have adopted a more formal resolution of
acceptance, its absence was not fatal; the board undoubtedly
considered its action final and contemplated no further
formalities. Its later resolution of June 7, 1954, which was
adopted simply because it was considered to have been "made
necessary by the bankruptcy of the contractor," in nowise
altered the finality of the board's acceptance on November

17, 1953. If the board had actually withheld its final payment for 60 days after the date of acceptance (as provided in the contract) it would have made payment on January 16, 1954. At that time no claim had been asserted by any lien claimant or the surety; indeed, Graybar first indicated to the board that it had a claim under date of April 6, 1954, and the Casualty Company first asserted its claim some time thereafter. Under the circumstances it cannot be said that either Graybar or the Casualty Company suffered any legal harm by the board's failure to withhold its final payment for 60 days after the date of acceptance. Furthermore it may be noted that Graybar did not file its claim with the Casualty Company within 80 days after acceptance as required by *N. J. S.* 2*A*:44–145; the Casualty Company's payment to Graybar despite this omission would seem to constitute a voluntary one which would not, in any event, be justly attributable to the board's conduct.

Affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices OLIPHANT, WACHENFELD, JACOBS and BRENNAN—5.

*For reversal*—None.